IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

FREDERICK DEVON HILLS,
      Petitioner,

vs.                            Case No.:  3:12cv28/LAC/EMT

MICHAEL D. CREWS,[1]
      Respondent.
_____/

## ORDER and REPORT AND RECOMMENDATION

This cause is before the court on Petitioner's petition for writ of habeas corpus and supporting memorandum, filed pursuant to 28 U.S.C. § 2254 (docs. 1, 2).  Respondent filed an answer and relevant portions of the state court record (doc. 23).  Petitioner filed a reply (doc. 30).

The case was referred to the undersigned for the issuance of all preliminary orders and any recommendations to the district court regarding dispositive matters.  *See* N.D. Fla. Loc. R. 72.2; *see also* 28 U.S.C. § 636(b) and Fed. R. Civ. P. 72(b).  After careful consideration of all issues raised by Petitioner, it is the opinion of the undersigned that no evidentiary hearing is required for the disposition of this matter, Rules Governing Section 2254 Cases 8(a).  It is further the opinion of the undersigned that the pleadings and attachments before the court show that Petitioner is not entitled to relief.

I.      BACKGROUND AND PROCEDURAL HISTORY

The relevant aspects of the procedural background of this case are established by the state court record (*see* doc. 23).[2]  Petitioner was charged in the Circuit Court in and for Escambia County,

---

[1] Michael D. Crews succeeded Kenneth S. Tucker as Secretary for the Department of Corrections, and is automatically substituted as Respondent.  *See* Fed. R. Civ. P. 25(d).

[2] Hereinafter all citations to the state court record refer to the exhibits submitted with Respondent's answer (doc. 23).  If a cited page has more than one page number, the court cites to the "Bates stamp" page number.

Florida, Case No. 2007-CF-2964, with one count of robbery armed with a firearm (Count 1) and three counts of aggravated assault by threat (Counts 2–4) (Ex. A at 1). Following a jury trial, he was found guilty as charged on Counts 1, 2, and 3, and not guilty on Count 4 (Ex. A at 33–34, Exs. B, C). On October 24, 2008, he was sentenced to life imprisonment on Count 1, with pre-sentence jail credit of 499 days (Ex. A at 38–50, 65–72). The court imposed a 10-year minimum mandatory for actual possession of a firearm during the commission of the offense in Count 1, and a minimum of life imprisonment upon finding Petitioner qualified as a prison releasee reoffender (*id.*). Petitioner was sentenced to concurrent terms of five (5) years of imprisonment on Counts 2 and 3, with pre-sentence jail credit of 499 days, to run concurrently with his sentence on Count 1 (*id.*).

Petitioner, through counsel, appealed the judgment to the Florida First District Court of Appeal ("First DCA"), Case No. 1D08-5757 (Ex. E). The First DCA affirmed the judgment per curiam without written opinion on January 29, 2010, with the mandate issuing March 26, 2010 (Ex. G). Hills v. State, 53 So. 3d 231 (Fla. 1st DCA 2010) (Table). Petitioner did not seek further review.

On September 20, 2010, Petitioner filed a motion for postconviction relief, pursuant to Rule 3.850 of the Florida Rules of Criminal Procedure (Ex. I at 1–10). In an order rendered September 28, 2010, the state circuit court struck the motion as facially insufficient, without prejudice to Petitioner's filing an amended motion "within a reasonable time" (*id.* at 11–12). Petitioner filed an amended motion on October 4, 2010 (*id.* at 13–23). The state circuit court summarily denied it on January 27, 2011 (*id.* at 24–32). Petitioner appealed the decision to the First DCA, Case No. 1D11-1003 (Ex. I at 129, Ex. J). The First DCA affirmed the judgment per curiam without written opinion on May 26, 2011, with the mandate issuing August 17, 2011 (Ex. K; doc. 1-1, Ex. C). Hills v. State, 65 So. 3d 1057 (Fla. 1st DCA 2011) (Table).

Petitioner filed the instant federal habeas action on January 17, 2012 (doc. 1 at 19).

II.    STANDARD OF REVIEW

Section 2254(a) of Title 28 provides that "a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court" upon a showing that his custody is in violation of the Constitution or laws of the United States. As the instant petition was filed after April 24, 1996, it is subject to the more deferential standard for habeas review of state court decisions under § 2254 as brought about by the Anti-Terrorism and Effective

Death Penalty Act of 1996 (AEDPA). Pub.L. 104-132, § 104, 110 Stat. 1214, 1218–19. In relevant part, section 2254(d) now provides:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C.A. § 2254 (2002).

The United States Supreme Court explained the framework for § 2254 review in <u>Williams v. Taylor</u>, 529 U.S. 362, 120 S. Ct. 1495, 146 L. Ed. 2d 389 (2000).[3] The appropriate test was described by Justice O'Connor as follows:

> In sum, § 2254(d)(1) places a new constraint on the power of a federal habeas court to grant a state prisoner's application for a writ of habeas corpus with respect to claims adjudicated on the merits in state court. Under § 2254(d)(1), the writ may issue only if one of the following two conditions is satisfied—the state court adjudication resulted in a decision that (1) "was contrary to . . . clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "involved an unreasonable application of . . . clearly established Federal law, as determined by the Supreme Court of the United States." Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

<u>Id.</u>, 529 U.S. at 412–13 (O'Connor, J., concurring); <u>Ramdass v. Angelone</u>, 530 U.S. 156, 120 S. Ct. 2113, 2119–20, 147 L. Ed. 2d 125 (2000). In employing this test, the Supreme Court has instructed

---

[3] Unless otherwise noted, references to <u>Williams</u> are to the majority holding, written by Justice Stevens for the Court (joined by Justices O'Connor, Kennedy, Souter, Ginsburg, and Breyer) in parts I, III, and IV of the opinion (529 U.S. at 367–75, 390–99); and Justice O'Connor for the Court (joined by Justices Rehnquist, Kennedy, Thomas, and—except as to the footnote—Scalia) in part II (529 U.S. at 403–13). The opinion of Justice Stevens in Part II was joined by Justices Souter, Ginsburg, and Breyer.

that on any issue raised in a federal habeas petition upon which there has been an adjudication on the merits in a formal State court proceeding, the federal court should first ascertain the "clearly established Federal law," namely, "the governing legal principle or principles set forth by the Supreme Court at the time the state court render[ed] its decision." Lockyer v. Andrade, 538 U.S. 63, 71–72, 123 S. Ct. 1166, 155 L. Ed. 2d 144 (2003). The law is "clearly established" if Supreme Court precedent at the time "would have compelled a particular result in the case." Neelley v. Nagle, 138 F.3d 917, 923 (11th Cir. 1998), *overruled on other grounds by* Parker v. Head, 244 F.3d 813, 835 (11th Cir. 2001).

Next, the court must determine whether the State court adjudication is contrary to the clearly established Supreme Court case law, either because "'the state court applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases' or because 'the state court confronts a set of facts that are materially indistinguishable from a decision of th[e] [Supreme] Court and nevertheless arrives at a result different from [Supreme Court] precedent.'" Lockyer, 538 U.S. at 73 (quoting Williams, 529 U.S. at 405–06). The Supreme Court has clarified that "[a]voiding these pitfalls does not require citation to our cases—indeed, it does not even require awareness of our cases, so long as neither the reasoning nor the result of the state-court decision contradicts them." Early v. Packer, 537 U.S. 3, 8, 123 S. Ct. 362, 365, 154 L. Ed. 2d 263 (2002) (quoting Williams, 529 U.S. at 405–06). If the State court decision is found in either respect to be contrary, the district court must independently consider the merits of the petitioner's claim. Moreover, where there is no Supreme Court precedent on point, the state court's conclusion cannot be contrary to clearly established federal law. *See* Henderson v. Campbell, 353 F.3d 880, 890 n.15 (11th Cir. 2003).

If on the other hand, the State court applied the correct Supreme Court precedent and the facts of the Supreme Court cases and the petitioner's case are not materially indistinguishable, the court must go to the third step and determine whether the State court "unreasonably applied" the governing legal principles set forth in the Supreme Court's cases. The standard for an unreasonable application inquiry is "whether the state court's application of clearly established federal law was objectively unreasonable." Williams, 529 U.S. at 409. Whether a State court's decision was an unreasonable application of a legal principle must be assessed in light of the record the court had before it. Holland v. Jackson, 542 U.S. 649, 652, 124 S. Ct. 2736, 2737–38, 159 L. Ed. 2d 683 (2004) (per curiam); *cf.*

Bell v. Cone, 535 U.S. 685, 697 n.4, 122 S. Ct. 1843, 1851 n.4, 152 L. Ed. 2d 914 (2002) (declining to consider evidence not presented to state court in determining whether its decision was contrary to federal law).  An objectively unreasonable application of federal law occurs when the State court "identifies the correct legal rule from Supreme Court case law but unreasonably applies that rule to the facts of the petitioner's case" or "unreasonably extends, or unreasonably declines to extend, a legal principle from Supreme Court case law to a new context."  Putman v. Head, 268 F.3d 1223, 1241 (11th Cir. 2001).  "In determining whether a state court's decision represents an unreasonable application of clearly established federal law, a federal court conducting habeas review 'may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.  Rather, that application must also be unreasonable.'"  Gill v. Mecusker, 633 F.3d 1272, 1287 (11th Cir. 2011) (quoting Williams, 529 U.S. at 411) (citing Harrington v. Richter, — U.S. —, 131 S. Ct. 770, 786–87, 178 L. Ed. 2d 624 (2011)).  The AEDPA's "unreasonable application" standard focuses on the state court's ultimate conclusion, not the reasoning that led to it.  See Gill, supra at 1291 (citing Harrington, 131 S. Ct. at 786).  Under § 2254(d), a habeas court must determine what arguments or theories supported or could have supported the state court's decision, and then ask whether it is possible that fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of the Supreme Court.  See Harrington, 131 S. Ct. at 786; see also Gill, supra, at 1292 (the federal district court may rely on grounds other than those articulated by the state court in determining that habeas relief was not warranted, so long as the district court did not err in concluding that the state court's rejection of the petitioner's claims was neither an unreasonable application of a Supreme Court holding nor an unreasonable determination of the facts).

Section 2254(d) also allows federal habeas relief for a claim adjudicated on the merits in State court where that adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d)(2).  The Supreme Court has clarified that: "a decision adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding."  Miller-El v. Cockrell, 537 U.S. 322, 340, 123 S. Ct. 1029, 1041, 154 L. Ed. 2d 931 (2003) (dictum).

When performing its review under § 2254(d), the federal court must bear in mind that any "determination of a factual issue made by a State court shall be presumed to be correct," and the petitioner bears "the burden of rebutting the presumption of correctness by clear and convincing evidence."  28 U.S.C. § 2254(e)(1); *see, e.g.,* Miller-El, 537 U.S. at 340 (explaining that a federal court can disagree with a state court's factual finding and, when guided by AEDPA, "conclude the decision was unreasonable or that the factual premise was incorrect by clear and convincing evidence"); Jones v. Walker, 469 F.3d 1216, 1226–27 (11th Cir. 2007) (holding that § 2254(d)(2)'s "unreasonable determination" standard "must be met by clear and convincing evidence," and concluding that that standard was satisfied where prisoner showed "clearly and convincingly" that the state court's decision "contain[ed] an 'unreasonable determination' of fact.").  The "unreasonable determination of the facts" standard is only implicated to the extent that the validity of the state court's ultimate conclusion is premised on unreasonable fact finding.  *See* Gill, 633 F.3d at 1292.  A petitioner is not entitled to relief unless he demonstrates by clear and convincing evidence that the record reflects an insufficient factual basis for affirming the state court's decision.  *Id.*

Only if the federal habeas court finds that the petitioner satisfied AEDPA, and § 2254(d), does the court take the final step of conducting an independent review of the merits of the petitioner's claims.  *See* Panetti v. Quarterman, 531 U.S. 930, 953, 127 S. Ct. 2842, 2858, 168 L. Ed. 2d 662 (2007); Jones, 469 F.3d 1216 (same).  The writ will not issue unless the petitioner shows that he is in custody "in violation of the Constitution or laws and treaties of the United States."  28 U.S.C. § 2254(a).

Within this framework, the court will review Petitioner's claims.

III.    PETITIONER'S CLAIMS

Ground One: "The Petitioner was convicted of two counts of aggravated assault whereby the State failed to meet the four required elements necessary to sustain the convictions.  This represents fundamental error, and is a violation of the Petitioner's rights to due process under the 14th Amendment to the U.S. Constitution."

Petitioner argues the jury returned inconsistent verdicts by finding him guilty of aggravated assault on Ms. Peggy Burkett (Count 2) and Ms. Theresa Sink (Count 3), but finding him not guilty of aggravated assault on Ms. Victoria Southard (Count 4) (doc. 1 at 5–7; doc. 2 at 1–4).  He additionally argues the evidence was insufficient to satisfy the intent element of aggravated assault, that is, that he

intentionally threatened to do violence to either of the victims (*id.*). He contends the mere fact that he displayed a gun is insufficient to satisfy the specific intent element of aggravated assault (*id.*).

Respondent argues Petitioner never presented to the state courts his argument that the verdicts on Counts 2 and 3 were inconsistent with the verdict on Count 4; therefore, that aspect of his claim is unexhausted (doc. 23 at 15). Respondent argues the state court's adjudication of the merits of Petitioner's sufficiency of the evidence claim as to Counts 2 and 3 was not contrary to or an unreasonable application of clearly established federal law (*id.* at 15–18).

    1.  Clearly Established Federal Law

As an issue of federal law, Petitioner's sufficiency of the evidence claim derives from the Fourteenth Amendment due process requirement that the evidence presented at trial be sufficient to convict, that is, the State must prove beyond a reasonable doubt every fact that constitutes an essential element of the crime charged against the defendant. In re Winship, 397 U.S. 358, 364, 90 S. Ct. 1068, 25 L. Ed. 2d 368 (1970). When reviewing a claim of insufficient evidence in federal habeas corpus, the proper inquiry is not whether the reviewing court itself believes that the evidence established guilt beyond a reasonable doubt but "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979) (citation omitted); *see also* Conklin v. Schofield, 366 F.3d 1191, 1200 (11th Cir. 2004). The evidence need not rule out every theory except that which signifies guilt beyond a reasonable doubt; "[t]he simple fact that the evidence gives some support to the defendant's theory of innocence does not warrant the grant of habeas relief." Wilcox v. Ford, 813 F.2d 1140, 1143 (11th Cir. 1987). Moreover, because jurors are free to evaluate the credibility of testimony and the weight of the evidence, the court should assume that all conflicting inferences were resolved against the defendant. *See* Wilcox, 813 F.2d at 1143. "It is only where, after viewing the evidence in its most favorable light and making all credibility decisions in favor of the state the evidence still fails to at least preponderate in favor of the state, that we become concerned with conflicting inferences." Cosby v. Jones, 682 F.2d 1373, 1383 (11th Cir. 1982).

Under Florida law, where a conviction was brought about solely through circumstantial evidence, the State must meet a stricter burden of proof, that is, that the evidence presented be

"inconsistent with any reasonable hypothesis of innocence." State v. Law, 559 So.2d 187, 188 (Fla. 1989).  However, this standard of proof is inapplicable for federal habeas review of a claim of insufficiency of the evidence; federal constitutional analysis under Jackson is all that is required. Bishop v. Kelso, 914 F.2d 1468, 1472–73 (11th Cir. 1990); Wilcox, 813 F.2d at 1145 & n.7.

> 2.      Federal Review of State Court Decision

Petitioner raised his sufficiency of the evidence claim as his first ground for relief on direct appeal of his conviction (Ex. E at 5–7).  The First DCA affirmed the conviction and sentence without written opinion (Ex. G).   "[T]he summary nature of a state court's decision does not lessen the deference that it is due."   Wright v. Moore, 278 F.3d 1245, 1254 (11th Cir. 2002); see also Harrington, 131 S. Ct. at 784–85 ("When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary.").  Where a state court denies relief without providing an explanation or its reasoning, the habeas petitioner must show that there was no reasonable basis for the state court's decision.  See Harrington, 131 S. Ct. at 784. The federal court must determine what arguments or theories supported or could have supported the state court's decision, and then ask whether it is possible that fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of the Supreme Court. See Harrington, 131 S.Ct. at 786; see also Gill, 633 F.3d at 1292 (holding that the federal district court may rely on grounds other than those articulated by the state court in determining that habeas relief was not warranted, so long as the district court did not err in concluding that the state court's rejection of the petitioner's claims was neither an unreasonable application of a Supreme Court holding nor an unreasonable determination of the facts).

Florida law defines the substantive elements of assault as (1) intentionally and unlawfully threatening by word or act to do violence to the person of another, coupled with (a) an apparent ability to do so and (b) doing some act which creates a well-founded fear in the mind of the other person that such violence is imminent.  See Fla. Stat. § 784.011(1).  The elements of aggravated assault are (1) committing an assault (2) with a deadly weapon without intent to kill.  See Fla. Stat. § 784.021.

The State presented evidence that Petitioner robbed a furniture store where Ms. Peggy Burkett, Ms. Theresa Sink, and Ms. Victoria Southard were working at the time (Exs. B, C).  Ms. Burkett

testified she was sitting behind the counter helping another customer, when she noticed Petitioner standing at the counter to the side of her (Ex. B at 142–44). Ms. Burkett heard Ms. Southard, who was two work stations down from her, ask Petitioner if she could help him (*id.* at 144). Petitioner responded, "I want your fucking money" (*id.*). Ms. Burkett testified Petitioner came behind the counter, and she saw a gun in his right hand (*id.* at 145). She testified that when he came around the counter, she opened her money drawer and slid back from the drawer (*id.*). She testified she was terrified, because Petitioner had a gun, and she feared he may shoot her (*id.* at 145–46). Ms. Burkett testified she watched Petitioner take the money out of her drawer and then move to the next money drawer, and when he had moved further down, she pushed the silent alarm near her drawer (*id.* at 146).

Ms. Southard testified her work station was two stations down from Ms. Burkett's, approximately three feet away (Ex. B at 163). She testified that when she asked Petitioner if she could help him, he said yes, she could give him "all the F'ing money" (*id.* at 164–65). She testified Petitioner came behind the counter, pulled a gun out of his pants, and waved it at her (*id.* at 165–66). Ms. Southard testified she was "the most afraid I've ever been in my entire life," and she feared he would shoot her or someone else, so she ran (*id.* at 166).

Ms. Sink testified she was behind the counter at her desk and saw Petitioner standing at the counter (Ex. B at 186–87). She testified she saw Petitioner come around from the front of the counter waving a gun and saying, "Give me all your F'ing money" (*id.* at 187–88). She testified she felt "very uncomfortable" and threatened, because she thought someone was going to get shot (*id.* at 188–89). Ms. Sink testified she opened her money drawer, opened another employee's money drawer, and then ran (*id.* at 189).

Viewing the evidence in the light most favorable to the State, a rational trier of fact could find beyond a reasonable doubt that Petitioner committed aggravated assault upon Ms. Burkett and Ms. Sink. Further, the fact that the jury found the evidence insufficient as to the aggravated assault count involving Ms. Southard, does not demonstrate the evidence on the other two aggravated assault counts was insufficient. As recognized by the Eleventh Circuit, a long line of Supreme Court precedent provides that "inconsistent jury verdicts among multiple defendants tried together on essentially the same evidence do not provide grounds for overturning an otherwise valid jury verdict which has

adequate evidentiary support." United States v. Andrews, 850 F.2d 1557, 1561 (11th Cir. 1988) (citing Dunn v. United States, 284 U.S. 390, 52 S. Ct. 189, 76 L. Ed. 356 (1932); United States v. Dotterweich, 320 U.S. 277, 64 S. Ct. 134, 88 L. Ed. 48 (1943); United States v. Powell, 469 U.S. 57, 63, 105 S. Ct. 471, 475, 83 L. Ed. 2d 461 (1984)).  The Eleventh Circuit has held that this principle applies with respect to inconsistency between verdicts on separate charges against one defendant. *See* United States v. Andrews, 850 F.2d 1557, 1561 (11th Cir. 1988) (citing Harris v. Rivera, 454 U.S. 339, 345, 102 S. Ct. 460, 464, 70 L. Ed. 2d 530 (1981) (citations omitted)).  Thus, inconsistency between verdicts, of itself, is not a sufficient reason for setting aside a verdict. *Id.*  Indeed, in Powell, the Supreme Court reaffirmed that "there is no reason to vacate [a criminal defendant's] conviction merely because the verdicts cannot rationally be reconciled."  469 U.S. at 69.  The Court stated, "where truly inconsistent verdicts have been reached, '[t]he most that can be said . . . is that the verdict shows that either in the acquittal or the conviction the jury did not speak their real conclusions, but that does not show that they were not convinced of the defendant's guilt.'" *Id.* at 64 (quoting Dunn, 284 U.S. at 393).  Thus, a defendant's acquittal on one count is irrelevant to the determination of whether the evidence supported his conviction on other counts. *See* United States v. Veal, 153 F.3d 1233, 1253 (11th Cir. 1998) (citing United States v. Church, 955 F.2d 688, 695 (11th Cir. 1992) (recognizing that inconsistent verdicts do not defeat a defendant's conviction)); *see also* United States v. Wright, 63 F.3d 1067, 1074 (11th Cir. 1995) (inconsistent verdicts, whether provided by a jury or a judge, are not subject to reversal merely because they are inconsistent).

The state court's rejection of Petitioner's challenge to the sufficiency of the evidence on Counts 2 and 3 was not contrary to clearly established Supreme Court precedent, did not involve an unreasonable application of clearly established Supreme Court precedent, and was not based on an unreasonable determination of the facts in light of the record before the state court. Therefore, Petitioner is not entitled to federal habeas relief on Ground One.

B.    Ground Two:  "Defense counsel was ineffective for failure to object to robbery videotape being admitted into evidence at trial.  The outcome of the trial would have been different if not for defense counsel's error.  This error was a violation of Hills' 6th and 14th Amendment rights under the U.S. Constitution."

Petitioner argues trial counsel rendered ineffective assistance by failing to challenge admission of a videotape of the robbery, on the ground that it was not properly authenticated with respect to time,

date, accuracy, identification of the persons in the videotape, accuracy of the recording equipment, and chain of custody of the videotape, as required by Florida Statutes § 90.901 (doc. 1 at 7–10; doc. 2 at 4–6).  Petitioner additionally argues the prosecutor's comment during closing argument that Petitioner was the person in the videotape was improper, because it invaded the province of the jury (*id.*).  Petitioner argues the outcome of his trial would have been different had the videotape been suppressed or otherwise not admitted into evidence (*id.*).

With regard to exhaustion, Respondent states Petitioner raised a similar issue in state court (doc. 23 at 8).  Respondent contends the state court's adjudication of the claim is not based upon an unreasonable determination of the facts, and is neither contrary to nor an unreasonable application of clearly established federal law (*id.*).

1.    Clearly Established Federal Law

The standard for evaluating claims of ineffective assistance of counsel is set forth in <u>Strickland v. Washington</u>, 466 U.S. 668 (1984).  To obtain relief under <u>Strickland</u>, Petitioner must show (1) deficient performance by counsel and (2) a reasonable probability that, but for counsel's deficient performance, the result of the proceeding would have been different. *Id.* at 687–88.  If Petitioner fails to make a showing as to either performance or prejudice, he is not entitled to relief. *Id.* at 697.

"The petitioner's burden to prove, by a preponderance of the evidence, that counsel's performance was unreasonable is a heavy one." <u>Jones v. Campbell</u>, 436 F.3d 1285, 1293 (11th Cir. 2006) (citing <u>Chandler v. United States</u>, 218 F.3d 1305, 1313 (11th Cir. 2000) (en banc)).  The focus of inquiry under the performance prong is "reasonableness under prevailing professional norms." <u>Strickland</u>, 466 U.S. at 688–89.  "Judicial scrutiny of counsel's performance must be highly deferential," and courts should make every effort to "eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Id.* at 689.  If the record is not complete regarding counsel's actions, "then the courts should presume 'that what the particular defense lawyer did at trial—for example, what witnesses he presented or did not present—were acts that some lawyer might do." <u>Jones</u>, 436 F.3d at 1293 (citing <u>Chandler</u>, 218 F.3d at 1314–15 n.15).  Furthermore, "[e]ven if many reasonable lawyers would not have done as defense counsel did at trial, no relief can be granted on

ineffectiveness grounds unless it is shown that no reasonable lawyer, in the circumstances, would have done so." Rogers v. Zant, 13 F.3d 384, 386 (11th Cir. 1994). Counsel's performance is deficient only if it is "outside the wide range of professional competence." Jones, 436 F.3d at 1293 (citing Strickland, 466 U.S. at 690); Lancaster v. Newsome, 880 F.2d 362, 375 (11th Cir. 1989) (emphasizing that petitioner was "not entitled to error-free representation"). "[T]here are no 'absolute rules' dictating what reasonable performance is . . . ." Michael v. Crosby, 430 F.3d 1310, 1320 (11th Cir. 2005) (quoting Chandler, 218 F.3d at 1317). Indeed, "'[a]bsolute rules would interfere with counsel's independence—which is also constitutionally protected—and would restrict the wide latitude counsel have in making tactical decisions.'" Id. (quoting Putman v. Head, 268 F.3d 1223, 1244 (11th Cir. 2001)).

As to the prejudice prong of the Strickland standard, Petitioner's burden of demonstrating prejudice is high. See Wellington v. Moore, 314 F.3d 1256, 1260 (11th Cir. 2002). The Supreme Court has cautioned that "'[i]t is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding.'" Id. (quoting Strickland, 466 U.S. at 693). However, the Court has also clarified that a petitioner need not demonstrate it "more likely than not, or prove by a preponderance of evidence," that counsel's errors affected the outcome. Strickland, 466 U.S. at 693–94. Instead,

> The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.

Id. at 694. Indeed, it would be "contrary to" the law clearly established in Strickland for a state court to reject an ineffectiveness claim for failing to prove prejudice by a preponderance of the evidence. Williams v. Taylor, 529 U.S. at 405–06.

The prejudice assessment does "not depend on the idiosyncrasies of the particular decisionmaker," as the court should presume that the judge or jury acted according to law. Strickland, 466 U.S. at 694–95. "When a defendant challenges a conviction, the question is whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt." Id. at 695. Further, when the claimed error of counsel occurred at the guilt stage of trial (instead of on appeal), Strickland prejudice is gauged against the outcome of the trial, not on

appeal.  *See* <u>Purvis v. Crosby</u>, 451 F.3d 734, 739 (11th Cir. 2006) (citing <u>Strickland</u>, 466 U.S. at 694–95).

Finally, when a district court considers a habeas petition, the state court's findings of historical facts in the course of evaluating an ineffectiveness claim are subject to the presumption of correctness, while the performance and prejudice components are mixed questions of law and fact.  <u>Strickland</u>, 466 U.S. at 698; <u>Collier v. Turpin</u>, 177 F.3d 1184, 1197 (11th Cir. 1999).

2.      Federal Review of State Court Decision

Petitioner raised this claim as Ground Four in his amended Rule 3.850 motion (Ex. I at 20–21).  The state circuit court correctly identified the <u>Strickland</u> standard as the legal standard applicable to Petitioner's claim (*id.* at 25–26).  The court adjudicated the claim as follows:

### 4) Unauthenticated Video Recording

Additionally, Defendant alleges that his attorney was ineffective for failing to object to the introduction of a video recording of the robbery.  Defendant alleges that the recording was not authenticated because there was no testimony that it was an accurate description of the events of April 6, 2007; there was no evidence regarding the time, date, or participants in the video; there was no testimony that the video depicted Defendant; there was no evidence regarding the condition or capability of the equipment used to produce the video; and there was no testimony regarding the chain of custody of the video.

This allegation is facially insufficient because Defendant has failed to show prejudice.  Defendant has failed to allege that the video equipment was not operating correctly or that there was an impermissible break in the chain of custody regarding the video recording.  Further, Defendant has failed to show that, had his attorney objected to the authentication of the video, the State would not have been able to adduce testimony sufficiently establishing the proper foundation for its admission.

On the contrary, the State adduced evidence that a video recording had been made of the robbery that was then turned over to the police.[FN 13]  Before the recording was played for the jury, the detective testified that he had viewed the video and that it was an accurate depiction of what it portrayed.[FN 14]  Also, each of the witnesses who had been in the store at the time of the robbery testified to the date of the event[FN 15] and indicated on still photographs their positions during the robbery.[FN 16] Therefore, the State could have adduced testimony from one or each of the eyewitnesses [as to] the time, date, and participants in the video.  Also, at the beginning of the trial during arguments regarding a motion *in limine*, the Court

specifically ruled that no witness could testify regarding whether he or she believed the man in the video recording "appear[ed] to be the defendant or not" because such testimony would be "invading the province of the jury."[FN 17]  Based on these factors, the Court does not find that this allegation can entitle Defendant to relief.

> [FN 13:  <u>Id.</u> [Attachment 4, trial transcript] at 151–52.]

> [FN 14:  <u>Id.</u> at 227–28.]

> [FN 15:  <u>Id.</u> at 142, 162, 174, and 186.]

> [FN 16:  <u>Id.</u> at 154–55, 164, 177–78, and 187.]

> [FN 17:  <u>Id.</u> at 121–22.]

(Ex. I at 30–32).  Petitioner appealed the decision to the First DCA, and the appellate court affirmed the lower court's decision without written opinion (Exs. J, K).

The state court's finding that the State could have adduced testimony from one or each of the eyewitnesses regarding the time, date, and participants in the video is supported by the record.  Ms. Burkett testified that the furniture store had cameras inside and outside of the store (Ex. B at 151).  She testified that the cameras videotaped the robbery, and she viewed the videotape once prior to its being turned over to the sheriff's department (*id.* at 151–52).  Ms. Burkett, Ms. Southard, Ms. Washington, and Ms. Sink, all of whom were in the store during the robbery, indicated on still photographs from the videotape their positions during the robbery (*id.* at 154–55, 164, 177–78, 187).  Moreover, all of these eyewitnesses testified to the date of the robbery, April 6, 2007, and three of them testified to the time as being midday (*id.* at 141–42, 162, 174, and 186).  Therefore, as the state court found, the State could have adduced testimony sufficiently establishing the time, date, and witnesses in the videotape.

Additionally, Petitioner also failed to show that counsel had a meritorious basis for objecting to admission of the videotape on the ground that the video equipment was not operating correctly, and there was an impermissible break in the chain of custody of the video.  Petitioner alleges no facts to support his speculation that the video equipment was not operating correctly.  As to the chain of custody, Ms. Burkett testified the videotape was given to the sheriff's department.  Detective Damon Castillo testified he arrived at the furniture store at approximately 1:40 p.m., and documented, collected, and preserved evidence of the robbery (Ex. B at 207).  He testified that while he was in the

store, he viewed a videotape of the robbery from the store's cameras (*id.* at 211–12). Detective Curtis Cephas testified the videotape was collected from the store and "turned into evidence" at the sheriff's department (*id.* at 227). He testified he checked out the video tape from the evidence room, viewed it, and placed his initials on the back of it (*id.* at 228). He testified that the videotape, which was published to the jury, was a copy of the store's video, and it was a true and accurate representation of what it depicted (*id.* at 227–28). In light of this testimony, and Petitioner's failure to allege any facts supporting his assertion that the video equipment was not operating correctly, he failed to show defense counsel was deficient in failing to challenge admission of the videotape on these grounds, or that there is a reasonable probability any such challenge would have resulted in exclusion of the videotape from trial.

Finally, Petitioner failed to show that counsel had a meritorious basis for objecting to admission of the videotape on the ground that there was no testimony identifying Petitioner as the robber in the videotape. As the state court found, at the beginning of the trial during arguments regarding a motion in limine, the trial court specifically ruled that no witness could testify regarding whether he or she believed the man in the video recording "appear[ed] to be the defendant or not" because such testimony would be "invading the province of the jury" (Ex. B at 121–22). In light of this pre-trial ruling, Petitioner failed to show that counsel was deficient for failing to object, and that there is a reasonable probability the trial court would have sustained an objection if counsel had made one.

For the aforementioned reasons, Petitioner failed to show deficient performance with regard to counsel's failure to challenge admission of the videotape on grounds of lack of authentication. He also failed to show a reasonable probability that the videotape would have been excluded had counsel made such a challenge, or that the result of his trial would have been different, especially in light of the evidence that Ms. Burkett, Ms. Southard, and Ms. Washington identified Petitioner in court as the robber; Detective Cephas testified that Ms. Washington and Ms. Burkett immediately identified Petitioner from a photographic lineup; and a DNA expert testified Petitioner's DNA was on a towel left by the robber in one of the cash drawers (Ex. B at 147, 167–68, 176–77, Ex. C at 226–27, 235–40). Therefore, the state court's adjudication of this claim is entitled to deference.

Petitioner's additional claim, that the prosecutor engaged in misconduct during closing argument by arguing that Petitioner was the man in the videotape, is without merit. To establish prosecutorial misconduct, a two-prong test must be satisfied: (1) the prosecutor's comments must have been improper; and (2) the comments must have rendered the trial fundamentally unfair. *See* United States v. Eyster, 948 F.2d 1196, 1206 (11th Cir. 1991) (citations omitted); Brooks v. Kemp, 762 F.2d 1383, 1400 (11th Cir. 1985) (en banc), *vacated on other grounds*, 478 U.S. 1016, 106 S. Ct. 3325, 92 L. Ed. 2d 732 (1986), *reinstated*, 809 F.2d 700 (11th Cir. 1987); Dessaure v. State, 891 So. 2d 455, 464–65 (Fla. 2004) (an order granting mistrial is required only when the error upon which it rests is so prejudicial as to vitiate the entire trial, making a mistrial necessary to ensure that the defendant receives a fair trial).

Under Florida law, the standard for reviewing prosecutorial comments is the following:

> Wide latitude is permitted in arguing to a jury. Logical inferences may be drawn, and counsel is allowed to advance all legitimate arguments. The control of comments is within the trial court's discretion, and an appellate court will not interfere unless an abuse of such discretion is shown. A new trial should be granted when it is "reasonably evident that the remarks might have influenced the jury to reach a more severe verdict of guilt than it would have otherwise done." Each case must be considered on its own merits, however, and within the circumstances surrounding the complained-of remarks.

Breedlove v. State, 413 So. 2d 1, 8 (Fla. 1982) (quoting Darden v. State, 329 So. 2d 287, 289 (Fla. 1976)) (other citations omitted). The prosecutor may not, however, "'inflame the minds and passions of the jurors so that their verdict reflects an emotional response to the crime or the defendant rather than the logical analysis of the evidence in light of the applicable law.'" Jones v. State, 612 So. 2d 1370, 1374 (Fla. 1993) (quoting Bertolotti v. State, 476 So. 2d 130 (Fla.1985)). This state rule is essentially the same as the federal due process standard governing allegedly improper argument by the prosecution.

The prosecutor is not limited to a bare recitation of the facts; he may comment on the evidence and express the conclusions he contends the jury should draw from the evidence. United States v. Johns, 734 F.2d 657, 663 (11th Cir. 1984). The prosecutor may argue both facts in evidence and reasonable inferences from those facts. *See* Tucker v. Kemp, 762 F.2d 1496, 1506 (11th Cir. 1985) (citations omitted). But if the evidence is too insubstantial to support a reasonable inference, the

prosecutor's comment will be deemed improper. *Id.* at 1507. Prosecutors must observe the distinction between the permissible practice of arguing evidence and suggesting inferences which the jury may reasonably draw from it and the impermissible practice of arguing suggestions beyond the evidence. *See* United States v. Simon, 964 F.2d 1082, 1086 (11th Cir. 1992) (citation omitted).

Here, the prosecutor's referring to Petitioner as the man in the videotape (Ex. C at 313–18) was not improper; rather, she was properly arguing a reasonable inference from the evidence adduced at trial and expressing a conclusion she contended the jury should draw from the evidence. Therefore, Petitioner is not entitled to relief on his claim of prosecutorial misconduct.

    C.    <u>Ground Three: "Defense counsel was ineffective for eliciting damaging testimony that the Petitioner was identified as a suspect by an anonymous tip from a person not available at trial, and that the Petitioner was the only male allowed to drive the suspect vehicle. The outcome of the trial would have been different if not for defense counsel's errors. These errors were a violation of Hills' 6th and 14th Amendment rights under the U.S. Constitution."</u>

Petitioner contends defense counsel performed ineffectively during cross-examination of Detective Curtis Cephas (doc. 1 at 10–11; doc. 2 at 7–10). He alleges counsel elicited testimony that Detective Cephas included Petitioner's photo in the photographic lineup, because the sheriff's department received an anonymous tip that Petitioner was the perpetrator (*id.*). Petitioner asserts the trial judge commented during a sidebar conference that Cephas' testimony was hearsay (*id.*). Petitioner alleges this testimony allowed the jury to assume that people other than testifying witnesses identified him as the perpetrator (*id.*).

Petitioner also argues defense counsel was ineffective for failing to present evidence impeaching Cephas' testimony linking a gold Taurus, driven by the robber, to Petitioner's niece (doc. 1 at 12–13; doc. 2 at 7–10). Petitioner alleges counsel should have presented evidence from the Department of Motor Vehicles ("DMV") showing that his niece's car was registered as a <u>white</u> Taurus, and showing that the first three symbols of his niece's license plate were "C04," not "CSU" as reported to law enforcement by witness Richard Norris (*id.*).

Petitioner additionally contends defense counsel was ineffective for bolstering the State's case by presenting testimony from George Walker, Petitioner's stepfather, that Petitioner had access to his niece's car during the time frame of the robbery, and Petitioner was the only male allowed to drive

his niece's car (doc. 1 at 13–14; doc. 2 at 7–10). Petitioner argues the outcome of his trial would have been different had defense counsel not made these errors (*id.*).

Respondent responded only to Petitioner's first argument regarding counsel's eliciting damaging testimony from Detective Cephas (doc. 23 at 18–20). Respondent states Petitioner raised a similar issue in state court (*id.* at 19). Respondent argues the state court's adjudication of the claim was not contrary to or an unreasonable application of clearly established federal law (*id.* at 19–20). Respondent did not respond to Petitioner's other two claims.

      1.      Clearly Established Federal Law

The Strickland standard, set forth *supra*, governs this claim.

      2.      Federal Review of State Court Decision

      a.      Counsel's eliciting damaging testimony from Detective Cephas

Petitioner raised this claim as Ground One in his amended Rule 3.850 motion (Ex. I at 14–16). The state circuit court adjudicated the claim as follows:

**1) Testimony of Witness Cephas**

In this ground, Defendant alleges that his attorney was ineffective in eliciting testimony from Detective Curtis Cephas of an anonymous "crimestoppers" tip that led the detective to investigate Defendant. Defendant alleges that this testimony was inadmissible hearsay and prejudiced him because it "left the jury with the clear impression that there were additional identifying witnesses against Defendant."

The Court does not find that Defendant has shown sufficient prejudice. The evidence adduced at trial against Defendant was quite strong. Four eyewitnesses to the robbery testified at trial, three of whom identified Defendant both in and out of court.[FN 5] DNA tests of a towel used by the robber to hide his face showed Defendant to be the "major contributor" to the DNA on the towel to a certainty of 1 in 900 trillion.[FN 6] A video recording of the robbery, upon which the jury relied heavily, was played repeatedly at trial.[FN 7] Furthermore, the State was able to discredit the alibi Defendant gave for the time of the robbery.[FN 8] Based on the overwhelming nature of the evidence against Defendant in this case, Defendant cannot show that the outcome of the trial would have been different if no reference had been made to the anonymous tip.

[FN 5: See Attachment, 4, excerpt from trial transcript, at 147–150, 167, 172, 177, 179–80, 184, and 279.]

[FN 6: Id. at 155, 209–10, 236–40, and 248.]

[FN 7:  Id. at 231, 318, and 336–41.]

[FN 8:  Id. at 280–84, and 287–90.]

Nor has Defendant shown that his counsel was deficient in adducing the evidence. Counsel used the testimony regarding the tip to the advantage of the defense by implying through her cross-examination of the detective that the anonymous, unsubstantiated tip was unreliable, making the investigation of Defendant arbitrary and similarly unreliable.[FN 9]  Defendant has not overcome the Court's requisite strong presumption that counsel acted using reasonable professional judgment when she opted to elicit information about the tip.  See generally Maxwell v. Wainwright, 490 So. 2d 927, 932 (Fla. 1986) (acts worthy of postconviction relief must be "outside the broad range of reasonably competent performance under prevailing professional standards"). As Defendant has failed to prove either deficient performance or prejudice, this allegation cannot entitle him to relief.

[FN 9:  Id. at 229–30, and 254–55.]

(Ex. I at 26–27).  Petitioner appealed the decision to the First DCA, and the appellate court affirmed the lower court's decision without written opinion (Exs. J, K).

The trial transcript shows that during defense counsel's cross-examination of Detective Cephas, counsel elicited testimony that Cephas had no information regarding the identity of the robbery suspect based upon the descriptions of the robber from eyewitnesses and the store's videotape (Ex. C at 229).  Counsel elicited testimony that the only basis for Cephas' focusing his investigation on Petitioner was an anonymous "Crimestoppers' tip," and Cephas admitted there was no way to verify the accuracy of the information provided by the tipster (id. at 229–30).  Cephas admitted that based upon this unverified and unverifiable information, he placed Petitioner's photo in the photographic lineup presented to the eyewitnesses (id.). This line of cross-examination explained to the jury the reason Petitioner's photo was included in the lineup, and suggested to the jury that the reason was not based upon reliable, accurate information.  This strategy was not unreasonable.

b.    Counsel's eliciting damaging testimony from George Walker

Petitioner raised this claim as Ground Two in his amended Rule 3.850 motion (Ex. I at 16–19). The state circuit court adjudicated the claim as follows:

**2) Testimony of Witness Walter**

Next, Defendant alleges that his attorney was ineffective in eliciting testimony from his stepfather, Witness Walker, that "Defendant was the only male he [had seen] driving Shayna Hills [Petitioner's niece] gold colored Taurus." Defendant argues that such testimony provided a link that the State had been unable to provide to the jury between Defendant and the suspect vehicle. Defendant alleges that he was prejudiced by this testimony in that the prosecutor relied upon the testimony in closing arguments to bolster the State's case against Defendant.

As previously noted, "[r]egarding trial counsel's performance, there is a strong presumption that trial counsel's conduct 'falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy.'" Strickland, 466 U.S. at 689. "Thus, counsel is not ineffective for strategic decisions that, in hindsight, did not work to the defendant's advantage." Souffrant v. State, 994 So. 2d 407, 410–11 (Fla. 3d DCA 2008), quoting Mansfield v. State, 911 So. 2d 1160, 1174 (Fla. 2005).

The record clearly illustrates that counsel's decisions to call Defendant's stepfather and to elicit information about the gold car were strategic decisions intended to cast doubt on the State's evidence.[FN 10]  Even in the present motion, Defendant concedes that the testimony counsel attempted to obtain from Witness Walker was elicited "to develop the defense theory of misidentification. Specifically, that Shayna Hills allowed other male relatives to borrow her vehicle." That Witness Walker did not testify as counsel had anticipated does not make counsel's strategy deficient.[FN 11]

[FN 10:  See Attachment 4 at 123–26, 194–97, and 254–69.]

[FN 11:  Id. at 273–74.]

Additionally, as noted above, the State's evidence against Defendant was quite strong despite any inability to link Defendant to the vehicle used in the robbery. Defendant cannot show that after hearing eyewitness testimony, witnessing in-court identifications of Defendant as the robber, seeing the video recording, and learning of the DNA match, the jury would have chosen to acquit Defendant solely due to a lack of a link between Defendant and the suspect vehicle. Based on these considerations, the Court finds that this allegation cannot entitle Defendant to relief.

(Ex. I at 27–29). Petitioner appealed the decision to the First DCA, and the appellate court affirmed the lower court's decision without written opinion (Exs. J, K).

The trial transcript shows that defense counsel elicited the following testimony from George Walker, Petitioner's stepfather: (1) Petitioner's niece, Shayna Hills, drove a gold Taurus in 2007, and (2) he did not see anyone other than Shayna, Petitioner, and another female drive it (Ex. C at 274).

The state court reasonably concluded Petitioner failed to show he was prejudiced by defense counsel's alleged errors. As previously discussed, Ms. Burkett, Ms. Southard, and Ms. Washington identified Petitioner in court as the robber. Ms. Burkett and Ms. Washington also immediately identified Petitioner in a photographic lineup. Eyewitnesses testified, and the videotape showed, that the robber held a towel to his face during part of the robbery. A DNA expert testified Petitioner's DNA matched DNA evidence found on the towel, which the robber left in one of the cash drawers. Petitioner failed to show a reasonable probability the jury would have acquitted him if defense counsel had not presented George Walker's testimony.

c.      Counsel's failure to present evidence regarding niece's car

Petitioner failed to exhaust his available state court remedies with regard to this ineffective assistance claim.[4] He did not present it in his amended Rule 3.850 motion, which is the proper vehicle for raising claims of ineffective assistance of counsel in the Florida courts. *See* Smith v. State, 998 So.2d 516, 522–23 (Fla. 2008) (explaining that in Florida, the proper vehicle for presenting an ineffective assistance of counsel claim is a postconviction motion filed under Florida Rule of Criminal Procedure 3.850). Petitioner is now barred by state procedural rules from returning to state court to present this ineffective assistance claim, because another Rule 3.850 motion would be subject to dismissal as untimely and successive. *See* Fla. R. Crim. P. 3.850(b), (f). Therefore, the claim is procedurally barred from federal review.

Notwithstanding Petitioner's failure to exhaust this claim, the claim is without merit. Petitioner admitted during his own trial testimony that Shayna Hills drove a gold Taurus (Ex. C at 277). Additionally, according to the police report, upon which Petitioner relies for his allegation that Richard Norris reported to law enforcement that the first three symbols on the suspect's license plate were CSU, Mr. Norris qualified his statement to law enforcement by stating he was not sure if CSU were the exact letters on the tag (*see* Ex. A at 3). In light of these facts, and the identification evidence

---

[4] Although Respondent did not raise an exhaustion defense to this claim, counsel did not expressly waive the exhaustion requirement. Therefore, the defense is not deemed waived. *See* 28 U.S.C. § 2254(b)(3).

presented at trial (the identification testimony from eyewitnesses and the DNA evidence linking Petitioner with the towel left in the cash drawer by the robber), Petitioner failed to show a reasonable probability the jury would have acquitted him if defense counsel had (1) presented DMV evidence that Shayna Hills' Taurus was registered as a white Taurus, not a gold Taurus, and (2) presented evidence that the first three symbols on Shayna Hills' license plate were C04, not CSU as had been reported to law enforcement by Mr. Norris.

      D.    <u>Ground Four</u>:  "<u>Defense counsel was ineffective for failure to advise Hills of inculpatory evidence to be presented at trial.  Defense counsel should have told Petitioner about the time cards showing that he was at his first job instead of his second job (as Hills believed and testified).  This error was a violation of Hills' 6th and 14th Amendment rights under the U.S. Constitution.</u>"

Petitioner contends counsel was ineffective for failing to advise him that the State had evidence that he was not working at Steak and Shake at the time of the robbery, contrary to Petitioner's alibi that he was working at the time of the robbery (doc. 1 at 15–17; doc. 2 at 10–13).  Petitioner alleges he worked at two jobs at the time of the robbery, a construction job in the morning and then Steak and Shake (*id.*).  He alleges he was unsure at which job he was working when the robbery occurred around midday on April 6, 2007 (*id.*).  He alleges he told defense counsel he believed he was at Steak and Shake, but defense counsel failed to verify this alibi by obtaining Petitioner's time records (*id.*).  Further, counsel failed to inform Petitioner prior to his trial testimony that the State intended to call Frank Tankersley as a rebuttal witness, who testified that Petitioner's time records showed he worked at Steak and Shake from 8:53 p.m. to 12:00 a.m. on the day of the robbery (*id.*).  Petitioner contends he was prejudiced by counsel's failure to advise him of Mr. Tankersley's potential testimony, because his credibility with the jury was seriously undermined (doc. 30 at 18).  He also alleges if he had known of the content of the Steak and Shake time sheets, he would have asked counsel to obtain time records from his other job (the construction job), and if the construction company did not have time records, he would have accepted the State's plea offer of seven years (doc. 1 at 17–18; doc. 30 at 19–21).

      Respondent argues Petitioner raised a similar issue in his amended Rule 3.850 motion, but Petitioner waited until his brief on postconviction appeal to assert for the first time that (1) he did not <u>actually</u> recall whether he was working at Steak and Shake from noon until 8:00 p.m., (2) he did not

have access to his work records at the time of trial, and (3) he was unsure if he had worked construction or at the restaurant at the time the robbery occurred (doc. 23 at 20). Respondent asserts Petitioner did not make these allegations in the trial court, and made them to the appellate court only after the trial court found that Petitioner was in a better position than defense counsel to know his work schedule, and Petitioner testified at trial that he knew he was working at Steak and Shake at the time of the robbery, because he "just saw" his time sheets (*id.* at 21). Respondent argues the state court reasonably concluded defense counsel was not deficient for failing to discover Petitioner was wrong about his whereabouts that day (*id.* at 21–22).

1.     Clearly Established Federal Law

The <u>Strickland</u> standard, set forth *supra*, governs this claim.

2.     Federal Review of State Court Decision

Petitioner raised this claim as Ground Three in his amended Rule 3.850 motion (Ex. I at 19–20). The state circuit court adjudicated the claim as follows:

**3) Evidence**

>      In this ground, Defendant alleges that his attorney was ineffective because she failed to inform him that the State would adduce testimony and evidence at trial proving that he was not at work during the robbery as he claimed. Defendant alleges that, had he known that this evidence would be presented, he would not have proceeded to trial. Instead, he would have accepted the plea offer of seven years in prison offered by the State.

>      To obtain relief on such a claim, Defendant "[must] show a reasonable probability that but for trial counsel's failure to advise him of the [omitted information], he would have accepted the State's offer, which involved a lesser sentence than the one he ultimately received." <u>Pennington v. State</u>, 34 So. 3d 151, 157 (Fla. 1st DCA 2010).

>      No one could have known more accurately than Defendant what his work hours had been at Steak and Shake on the day of the robbery or what time he clocked in and out of work on that day. Therefore, the information on the time card that the State presented at trial was not a surprise to Defendant. Defendant even testified at trial that he had recently seen his time card.[FN 12] Counsel cannot be deficient for failing to tell Defendant something that he already knew, nor can Defendant have been prejudiced by his counsel's failure to inform him of facts he already knew. Also, a claim that counsel was ineffective for failing to inform Defendant that the State could prove its case at trial does not constitute a valid ineffective assistance claim. <u>See</u>

Burke v. State, 985 So. 2d 1183 (Fla. 5th DCA 2008) (noting that "[i]n essence, [the defendant] claims that he would have entered a plea if he knew the State could prove its case. If that constituted ineffective assistance of counsel, no conviction could ever withstand postconviction scrutiny").

[FN 12: Id. [trial transcript] at 282.]

Further, the Court finds this situation to be analogous to a situation in which a defendant has chosen to accept a plea offer from the State but later moves to withdraw the plea due to misapprehension of material fact at the time that he made his decision. In such cases, the law indicates that "[a]lthough a court should be liberal in exercising its discretion to permit a defendant to withdraw his guilty plea where he demonstrates that the plea was based upon *a failure to communicate or a misunderstanding of facts* which were material in his decision to enter the plea," where the miscommunication or misunderstanding results from the defendant's silence regarding facts known to him, he is not entitled to relief. Goff v. State, 498 So. 2d 1035, 1036 (Fla. 1st DCA 1986) (internal citation omitted) (emphasis in original).

In this case, Defendant alleges that his decision to forgo entering a plea was based upon his counsel's failure to communicate to him that his time card from Steak and Shake would be presented at trial to show that he was not at work during the time of the robbery as he claimed. However, as noted, what time he had clocked in and out of work on the day of the robbery and what the time cards would show were facts known to Defendant. Therefore, Defendant has failed to prove that he made his decision regarding whether to accept the State's plea offer under a mistaken impression or misunderstanding of fact. Consequently, the Court does not find that this allegation entitles Defendant to relief.

(Ex. I at 29–30). Petitioner appealed the decision to the First DCA, and the appellate court affirmed the lower court's decision without written opinion (Exs. J, K).

The state court's finding that Petitioner testified at trial that he had recently seen his time card from Steak and Shake is supported by the record. The trial transcript shows that defense counsel elicited testimony from Petitioner that he worked at a construction job in Perdido in the mornings and then at Steak and Shake (Ex. C at 276). She elicited testimony that Petitioner owned a Ford F-150 truck, which was operable at the time of the robbery (*id.* at 277). Counsel elicited testimony that Petitioner occasionally used his niece's gold Taurus, but any time he was in the vehicle, she was with him (*id.* at 278). She also elicited Petitioner's testimony that he did not borrow his niece's vehicle on April 6, 2007 (*id.* at 278–79). Defense counsel then elicited testimony from Petitioner that he did not rob the furniture store and was thus not the man in the videotape with a towel covering most of his

face (*id.* at 279–80). Counsel asked Petitioner whether the witnesses who identified him as the robber in the photographic lineup were confused, and Petitioner responded, "They got to be because I was working at Steak and Shake on that day" (*id.* at 280). Defense counsel asked him how he remembered he was at work on April 6, 2007, and Petitioner responded, "Because I just saw my time sheets." (*id.* at 282). Petitioner thus admitted under oath that he knew, prior to testifying, the content of his Steak and Shake time sheets. In light of Petitioner's pre-testimony knowledge, he cannot show that counsel's failure to advise him of the content of those records affected his credibility with the jury.

Petitioner also failed to show ineffective assistance with regard to counsel's failure to obtain the Steak and Shake time records or investigate time records from the construction company prior to Petitioner's rejecting the State's plea offer of seven years. The state circuit court found as fact that Petitioner knew the times he had clocked in and out of work at Steak and Shake on the day of the robbery (Ex. I at 30). Based upon this fact, the court concluded Petitioner failed to show that counsel's failure to obtain the Steak and Shake time records affected his decision to reject the plea offer (*id.*).

The Supreme Court has made clear that whether a state court's decision was unreasonable must be assessed in light of the record the court had before it. *See* Cullen v. Pinholster, — U.S. —, 131 S. Ct. 1388, 1398, 179 L. Ed. 2d 557 (2011) ("[R]eview under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits."); 131 S. Ct. at 1400 ("If a claim has been adjudicated on the merits by a state court, a federal habeas petitioner must overcome the limitation of § 2254(d)(1) on the record that was before that state court."); Holland, 542 U.S. at 652; Yarborough v. Gentry, 540 U.S. 1, 6, 124 S. Ct. 1, 157 L. Ed .2d 1 (2003) (denying relief where state court's application of federal law was "supported by the record"); Miller-El, 537 U.S. at 348 (2003) (reasonableness of state court's factual finding assessed "in light of the record before the court"); *see also* Bell, 535 U.S. at 697 (declining to consider evidence not presented to state court in determining whether its decision was contrary to federal law); Borden v. Allen, 646 F.3d 785, 816–17 (11th Cir. 2011) (holding that in reviewing a claim under § 2254(d)(1), the federal court is confined to the allegations made in the prisoner's state court pleading; "Logically, [the state] court could only undertake an 'adjudication of the claim' that was presented to it; we believe that a review of a state court adjudication on the merits in light of allegations not presented to the state court—for

example, by examining additional facts or claims presented for the first time in a petitioner's federal habeas petition—would insufficiently respect the 'historic and still vital relation of mutual respect and common purpose existing between the States and the federal courts.'") (citing <u>Powell v. Allen</u>, 602 F.3d 1263 (11th Cir. 2010)); <u>Fortenberry v. Haley</u>, 297 F.3d 1213, 1233 (11th Cir. 2002) (declining to consider evidence not presented to state court in determining whether its decision was contrary to federal law).

Here, the First DCA affirmed the trial court's summary denial of this claim, based upon the trial court's finding that Petitioner knew, at the time he rejected the plea offer, the times he had clocked in and out of Steak and Shake on the day of the robbery.[5] Petitioner failed to produce clear and convincing evidence to rebut the state court's factual finding; therefore, this finding is presumed correct, pursuant to § 2254(e)(1).[6] Because Petitioner knew the times he had clocked in and out of

---

[5] Any new factual allegations included in his postconviction appellate brief could not be considered by the First DCA, including his allegations that he told counsel he was working at either his construction job or Steak and Shake, he was "unsure" at which job he was working when the robbery occured, and he told defense counsel he "believed" he was at Steak and Shake (Ex. J at 14, 17). Under Florida law, the appellate court's review of the trial court's summary denial of the Rule 3.850 motion was limited to matters alleged in the Rule 3.850 motion. *See* <u>Tanner v. State</u>, 652 So. 2d 1295 (Fla. 4th DCA 1995) (Mem) (on appellate review of trial court's summary denial of Rule 3.850 motion, court considers allegations of Rule 3.850 motion and determines whether portions of the record attached to trial court's order conclusively disprove allegations of motion); *see also* <u>Gorham v. State</u>, 521 So. 2d 1067, 1069 (Fla. 1988) (where trial court summarily denied defendant's motion for postconviction relief without evidentiary hearing and without attaching portion of record conclusively showing defendant is entitled to no relief, appellate review is limited to determining whether, accepting allegations in Rule 3.850 motion as true, motion shows that defendant is not entitled to relief); <u>Oliver v. State</u>, 807 So. 2d 780, 781 (Fla. 5th DCA 2002) (same); <u>Wright v. State</u>, 646 So. 2d 811 (Fla. 1st DCA 1994) (same). Therefore, in affirming the trial court's decision, the First DCA could not properly consider Petitioner's new factual allegations suggesting he expressed uncertainty to defense counsel regarding whether he was working at Steak and Shake at the time of the robbery.

[6] Petitioner may not rely upon his new factual allegations (asserted for the first time in his state postconviction appellate brief and repeated in his federal petition) to rebut the presumption of correctness which attaches to the state court factual findings. Nor may he use these new allegations as a basis for seeking a federal evidentiary hearing on the factual issue of whether he advised defense counsel of his construction company job or expressed uncertainty to defense counsel regarding whether he was working at Steak and Shake at the time of the robbery. Section 2254 provides, in relevant part:

> (e)(1) In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.

> (2) If the applicant has failed to develop the factual basis of a claim in State court proceedings, the court shall not hold an evidentiary hearing on the claim unless the applicant shows that—

Steak and Shake at the time of the robbery, the state court reasonably concluded that defense counsel's failure to obtain the Steak and Shake time records did not affect Petitioner's decision to reject the plea offer.

Additionally, with respect to the construction company time records, Petitioner failed to allege in his Rule 3.850 motion that he advised counsel he also worked at a construction company, and he admits in his federal petition that the construction company may not have had time records. Therefore, he failed to demonstrate ineffective assistance with regard to defense counsel's failure to investigate time records from the construction company.

Petitioner failed to demonstrate that the state court's adjudication of the Ground Four was based upon an unreasonable determination of the facts, or was contrary to or an unreasonable application of Strickland. Therefore, he is not entitled to relief on Ground Four.

IV.     CERTIFICATE OF APPEALABILITY

As amended effective December 1, 2009, § 2254 Rule 11(a) provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant," and if a certificate is issued "the court must state the specific issue or issues that satisfy the showing

---

(A) the claim relies on—

    (i) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or

    (ii) a factual predicate that could not have been previously discovered through the exercise of due diligence; and

(B) the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.

28 U.S.C. § 2254(e)(2).  Here, Petitioner's new factual allegations were not part of the state postconviction record, as discussed *supra*; therefore, he may not use them to attempt to rebut the state court's factual finding.  Further, Petitioner knew at the time of filing his amended Rule 3.850 motion whether or not he had told counsel about his construction company job or expressed uncertainty to defense counsel regarding whether he was working at Steak and Shake at the time of the robbery.  Therefore, he is not entitled to an evidentiary hearing on this factual issue.

required by 28 U.S.C. § 2253(c)(2)."  A timely notice of appeal must still be filed, even if the court issues a certificate of appealability.  Rule 11(b), Rules Governing Section 2254 Cases.

The undersigned finds no substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2); <u>Slack v. McDaniel</u>, 529 U.S. 473, 483–84, 120 S. Ct. 1595, 1603–04, 146 L. Ed. 2d 542 (2000) (explaining how to satisfy this showing) (citation omitted).  Therefore, the undersigned recommends that the district court deny a certificate of appealability in its final order.

The second sentence of new Rule 11(a) provides:  "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue."  Thus, if there is an objection to this recommendation by either party, that party may bring this argument to the attention of the district judge in the objections permitted to this report and recommendation.

Accordingly, it is **ORDERED**:

The clerk of court is directed to change the docket to reflect that Michael D. Crews is substituted for Kenneth S. Tucker as Respondent.

And it is respectfully **RECOMMENDED**:

1.      That the petition for writ of habeas corpus (doc. 1) be **DENIED**.

2.      That a certificate of appealability be **DENIED**.

At Pensacola, Florida, this 22<u>nd</u> day of May 2013.


/s/ *Elizabeth M. Timothy*
**ELIZABETH M.  TIMOTHY**
**UNITED STATES MAGISTRATE JUDGE**


## NOTICE TO THE PARTIES

**Objections to these proposed findings and recommendations may be filed within fourteen (14) days after being served a copy thereof.  <u>Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.</u>  A copy of objections shall be served upon the magistrate judge and all other parties.  Failure to object may limit the scope of appellate review of factual findings.  *See* 28 U.S.C. § 636; <u>United States v. Roberts</u>, 858 F.2d 698, 701 (11th Cir. 1988).**